AO 106A  (08/18)  Application for a Warrant by Telephone or Other Reliable Electronic Means

# UNITED STATES DISTRICT COURT

for the

Southern District of California

In the Matter of the Search of )
*(Briefly describe the property to be searched* )
*or identify the person by name and address)* )       Case No.  **25-mj-00100-KSC**
October 2, 2024, download of: )
Black Motorola Moto G Cricket Cellular Phone )
Seizure No. 2024250600034301-0004 )

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

located in the _____Southern_____ District of _____California_____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

❏ contraband, fruits of crime, or other items illegally possessed;

❏ property designed for use, intended for use, or used in committing a crime;

❏ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952, 960, 963 | Importation and Conspiracy to Import Controlled Substance |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

❏ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

_____
*Applicant's signature*

Special Agent Christopher Villanueva
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by
_____telephone_____ *(specify reliable electronic means)*.

Date: _____January 9, 2025_____

_____
*Judge's signature*

City and state: _San Diego, California_

Hon. Karen S. Crawford, United States Magistrate Judge
*Printed name and title*

## AFFIDAVIT

I, Special Agent Christopher Villanueva, being duly sworn, hereby state as follows:

### INTRODUCTION

1.     I am a Special Agent (SA) with the Homeland Security Investigations.

2.     On or about September 27, 2024, I applied for and obtained a warrant to search the following electronic device:

> Black Motorola Moto G Cricket Cell Phone
> Seizure No. 2024250600034301-0004
> ("**Target Device**")

and seize evidence of crimes, specifically, violations of Title 21, United States Code, Sections 952, 960, and 963. A copy of the application package in support of the search warrant, *i.e.*, No. 24MJ3677, which I signed and swore to before U.S. Magistrate Judge Michael S. Berg, is attached hereto as Exhibit A and incorporated by reference (hereafter, the original application package).

3.     Pursuant to the original application package, the **Target Device** was downloaded on October 2, 2024, and the ninety-day window to extract data subject to seizure pursuant to Attachment B began. Unfortunately, due to an oversight by the previously assigned AUSA who went on maternity leave and the undersigned case agent, the data extraction—that is, the Attachment B review—was not completed within the ninety-day window, which was not extended and which therefore expired on December 26, 2024. The undersigned respectfully requests this warrant to search the existing download and seize evidence of criminal activity pursuant to Attachment B.

4.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the October 2, 2024, download of the **Target Device**, it does not contain all the information known by me or other investigators regarding this investigation. All dates and times described are approximate.

## BACKGROUND

5.    I have been employed as a Special Agent with Homeland Security Investigations (HSI) since February of 2023. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

6.    During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California. Through my training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

7.    I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones. A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States. These communications can occur before, during and after the narcotics are imported into the United States. For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation. When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity. When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within

the United States.

8.    Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

   a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

   b.    tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

   c.    tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

   d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

   e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

   f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

9.    On April 16, 2024, at approximately 1:52 AM, Regino ESPERICUETA, ("ESPERICUETA"), a Mexican Citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #1. ESPERICUETA was the driver,

sole occupant, and registered owner of a 2005 Acura MDX ("the vehicle") bearing California license plates.

10.    A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the rear floor of the vehicle.

11.    A Customs and Border Protection Officer received two negative customs declarations from ESPERICUETA. ESPERICUETA stated he was crossing the border to go to San Bernadino, California. The vehicle was referred for further inspection.

12.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the spare tire and rear cargo area of the vehicle.

13.    Further inspection of the vehicle resulted in the discovery of approximately 48 total packages concealed inside a non-factory compartment welded underneath the rear passenger seats and inside the spare tire underneath the rear of the vehicle, with a total approximate weight of 43.32 kgs (95.50 lbs).  A sample of the substance contained within the packages field tested positive for the characteristics of methamphetamine.

14.    ESPERICUETA was placed under arrest at approximately 4:05 AM.

15.    During a post-Miranda interview, ESPERICUETA denied knowledge that the narcotics were in the vehicle. ESPERICUETA stated on March 25, 2024, he drove the vehicle from San Bernardino, California to the Tijuana, Baja California, Mexico Airport to fly to Nayarit, Mexico. ESPERICUETA stated he parked and left the vehicle at the Tiuana Airport parking structure while he was in Nayarit, Mexico for about three weeks. ESPERICUETA stated he and his adult daughters were the only individuals that would be able to have access to his vehicle. ESPERICUETA stated he flew from Nayarit, Mexico and arrived at the Tijuana Airport on April 15, 2024 at approximately 11:00 PM. ESPERICUETA stated he then drove to the Otay Mesa Port of Entry and was going home to San Bernardino, California.

16.    ESPERICUETA was arrested and charged with a violation of Title 21, United States Code, 952 and 960, importation of a controlled substance in 24-cr-00875-LL.

17.    The Target Device was found and seized by a Customs and Border Protection Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and inventory all the property seized from the Defendant and his Vehicle. The Target Device was found by the CBPO on top of the front passenger seat of the vehicle within arms reach of ESPERICUETA and, during the interview, Defendant was shown the Target Device and identified the Target Device as belonging to him.

18.    Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device. In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States. Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

19.    Based upon my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on April 2, 2024, up to and including April 16, 2024.

## METHODOLOGY

20.    It is not possible to determine merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as

personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing.

21.    Following the issuance of the warrant, I will search the October 2, 2024, download for the **Target Device** in order to identify and extract the data subject to seizure pursuant to Attachment B. The personnel conducting the identification and extraction of data subject to seizure pursuant to Attachment B will complete the analysis by no later than February 8, 2025, absent further application to this court.

## PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE

22.    Prior attempts to obtain this evidence have been stated above.

## CONCLUSION

23.    Based on the facts and information set forth above and in the original application package, I submit there is probable cause to believe that a search of the October 2, 2024, download of the **Target Device** will yield evidence of ESPERICUETA's and others' violations of Title 21, United States Code, Sections 952, 960, and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

Special Agent Christopher Villanueva
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 9th day of January, 2025

Honorable Karen S. Crawford
United States Magistrate Judge

## **ATTACHMENT A**
PROPERTY TO BE SEARCHED

The following property is to be searched:

      October 2, 2024, download of:
      Black Motorola Moto G Cricket Cellular Phone
      Seizure No. 2024250600034301

The download is currently in the possession of Homeland Security Investigations, located at 880 Front Street, Suite 3200, San Diego, California 92101.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the October 2, 2024, download of the cellular/mobile telephone, as described in Attachment A, includes the search of deleted data, remnant data, slack space, and temporary or permanent files contained in the download for the evidence described below. The seizure and search of the download shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the October 2, 2024, download of the cellular/mobile telephone, as described in Attachment A, will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 2, 2024, up to and including April 16, 2024:

    a.    tending to indicate efforts to distribute or import controlled substances;

    b.    tending to identify accounts, facilities, storage devices, and/or services – such as email addresses, IP addresses, and phone numbers – used to facilitate the distribution or importation of controlled substances;

    c.    tending to identify co-conspirators, criminal associates, or others involved in the distribution or importation of controlled substances;

    d.    tending to identify travel to or presence at locations involved in the distribution or importation of controlled substances, such as stash houses, load houses, or delivery points;

    e.    tending to identify the user of, or persons with control over or access to, the cellphone; and/or

    f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt or receipt of communications

which are evidence of violations of Title 21, United States Code, Sections 952, 960, and 963.

# Exhibit A

AO 93C  (08/18)  Warrant by Telephone or Other Reliable Electronic Means

☐ Original     ☐ Duplicate Original

# UNITED STATES DISTRICT COURT
for the
Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Black Motorola Moto G Cricket<br>2024250600034301-0004<br>("Target Device") | ) **NOT FOR PUBLIC VIEW**<br>)<br>) Case No.    '24  MJ3677<br>)<br>)<br>) |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To:     Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the     Southern     District of     California
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A, incorporated herein by reference.

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B, incorporated herein by reference.

**YOU ARE COMMANDED** to execute this warrant on or before     October 11, 2024     *(not to exceed 14 days)*
☑ in the daytime 6:00 a.m. to 10:00 p.m.     ☐ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to     Hon. Michael S. Berg     .
*(United States Magistrate Judge)*

☐ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
☐ for _____ days *(not to exceed 30)*     ☐ until, the facts justifying, the later specific date of _____

Date and time issued:     September 27, 2024    1301

*Judge's signature*

City and state:     San Diego, California     Hon. Michael S. Berg, United States Magistrate Judge
*Printed name and title*

AO 93C  (08/18) Warrant by Telephone or Other Reliable Electronic Means (Page 2)

| **Return** | | |
|---|---|---|
| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |

| Inventory made in the presence of : |
|---|

| Inventory of the property taken and name(s) of any person(s) seized: |
|---|
| |

| **Certification** |
|---|

 I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.


Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## <u>ATTACHMENT A</u>

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Motorola Moto G Cricket
> Seizure No. 2024250600034301-0004
> (**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

## **ATTACHMENT B**
## ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 2, 2024 up to and including April 16, 2024:

a.    tending to indicate efforts to import controlled substances from Mexico into the United States;

b.    tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.    tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d.    tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.    tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.    tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

# UNITED STATES DISTRICT COURT

for the

Southern District of California

| | |
|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br>Black Motorola Moto G Cricket<br>2024250600034301-0004<br><br>("Target Device") | )<br>)<br>)<br>)<br>)<br>) Case No.  '24  MJ3677 |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location):*

See Attachment A, incorporated herein by reference.

located in the _____ Southern _____ District of _____ California _____ , there is now concealed *(identify the person or describe the property to be seized):*

See Attachment B, incorporated herein by reference.

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more):*

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 21 USC Sec. 952 and 960 | Importation of a Controlled Substance |
| 21 USC Sec. 963 | Conspiracy to Import |

The application is based on these facts:

See Attached Affidavit, incorporated herein by reference.

☑ Continued on the attached sheet.

☐ Delayed notice of \_\_\_\_\_ days *(give exact ending date if more than 30 days:* _____ *)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Christopher Villanueva, HSI Special Agent

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

_____ telephone _____ *(specify reliable electronic means).*

Date:  September 27, 2024

*Judge's signature*

City and state:  San Diego, California

Hon. Michael S. Berg, United States Magistrate Judge

*Printed name and title*

## ATTACHMENT A

PROPERTY TO BE SEARCHED

The following property is to be searched:

> Black Motorola Moto G Cricket
> Seizure No. 2024250600034301-0004
> (**"Target Device"**)

The **Target Device** is currently in the possession of Homeland Security Investigations, located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

**ATTACHMENT B**
ITEMS TO BE SEIZED

Authorization to search the cellular telephone described in Attachment A includes the search of disks, memory cards, deleted data, remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone for evidence described below. The seizure and search of the cellular telephone shall follow the search methodology described in the affidavit submitted in support of the warrant.

The evidence to be seized from the cellular telephone will be electronic records, communications, and data such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data, for the period of April 2, 2024 up to and including April 16, 2024:

a. tending to indicate efforts to import controlled substances from Mexico into the United States;

b. tending to identify accounts, facilities, storage devices, and/or services– such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c. tending to identify co-conspirators, criminal associates, or others involved in importation of methamphetamine, or some other federally controlled substance, from Mexico into the United States;

d. tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e. tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f. tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above;

which are evidence of violations of Title 21, United States Code, Sections 952, 960 and 963.

## **AFFIDAVIT**

I, Special Agent Christopher Villanueva, being duly sworn, hereby state as follows:

### **INTRODUCTION**

1.     I submit this affidavit in support of an application for a warrant to search the following electronic device:

Black Motorola Moto G Cricket Cell Phone

Seizure No. 2024250600034301-0004

("**Target Device**")

as further described in Attachment A, and to seize evidence of crimes, specifically violations of Title 21, United States Code, Sections 952, 960, and 963 as further described in Attachment B.  The requested warrant relates to the investigation and prosecution of Regino ESPERICUETA ("Defendant") for importing approximately 43.32 kilograms (95.50 pounds) of Methamphetamine from Mexico into the United States.  The **Target Device** is currently in the custody of Homeland Security Investigations and located at 2055 Sanyo Avenue, Suite 120, San Diego, California 92154.

2.     The information contained in this affidavit is based upon my training, experience, investigation, and consultation with other members of law enforcement. Because this affidavit is made for the limited purpose of obtaining a search warrant for the **Target Device**, it does not contain all the information known by me or other agents regarding this investigation.  All dates and times described are approximate.

### **BACKGROUND**

3.     I have been employed as a Special Agent with Homeland Security Investigations (HSI) since February of 2023. I am currently assigned to the HSI Office of the Deputy Special Agent in Charge, in San Ysidro, California. I am a graduate of the Federal Law Enforcement Training Center in Glynco, Georgia.

4.     During my tenure with HSI, I have participated in the investigation of various narcotics trafficking organizations involved in the importation and distribution of controlled substances into and through the Southern District of California.  Through my

training, experience, and conversations with other law enforcement officers experienced in narcotics trafficking investigations, I have gained a working knowledge of the operational habits of narcotics traffickers, in particular those who attempt to import narcotics into the United States from Mexico at Ports of Entry.

5.  I am aware that it is common practice for narcotics traffickers to work in concert utilizing cellular telephones.  A common tactic utilized by narcotics traffickers is to smuggle controlled substances into the United States from Mexico by concealing the controlled substances in vehicles or on persons entering the United States at Ports of Entry such as the San Ysidro Port of Entry, Otay Mesa Port of Entry, and Tecate Port of Entry. With respect to the importation of narcotics in this manner, I am aware that narcotics traffickers in Mexico frequently communicate with the individual responsible for importing the concealed narcotics into the United States.  These communications can occur before, during and after the narcotics are imported into the United States.  For example, prior to the importation, narcotics traffickers frequently communicate with the transporter(s) regarding arrangements and preparation for the narcotics importation.  When the importation is underway, narcotics traffickers frequently communicate with the transporter(s) to remotely monitor the progress of the narcotics, provide instructions and warn accomplices about law enforcement activity.  When the narcotics have been imported into the United States, narcotics traffickers may communicate with the transporter(s) to provide further instructions regarding the delivery of the narcotics to a destination within the United States.

6.  Based upon my training, experience, and consultations with law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I am aware that cellular telephones (including their SIM card(s)) can and often do contain electronic evidence, including, for example, phone logs and contacts, voice and text communications, and data, such as emails, text messages, chats and chat logs from various third-party applications, photographs, audio files, videos, and location data. This information can be stored within disks, memory cards, deleted data,

remnant data, slack space, and temporary or permanent files contained on or in the cellular telephone. Specifically, searches of cellular telephones of individuals involved in the importation of narcotics may yield evidence:

a.     tending to indicate efforts to import controlled substances from Mexico into the United States;

b.     tending to identify accounts, facilities, storage devices, and/or services–such as email addresses, IP addresses, and phone numbers–used to facilitate the importation of controlled substances from Mexico into the United States;

c.     tending to identify co-conspirators, criminal associates, or others involved in importation of controlled substances from Mexico into the United States;

d.     tending to identify travel to or presence at locations involved in the importation of controlled substances from Mexico into the United States, such as stash houses, load houses, or delivery points;

e.     tending to identify the user of, or persons with control over or access to, the **Target Device**; and/or

f.     tending to place in context, identify the creator or recipient of, or establish the time of creation or receipt of communications, records, or data involved in the activities described above.

## FACTS SUPPORTING PROBABLE CAUSE

7.     On April 16, 2024, at approximately 1:52 AM, Regino ESPERICUETA, ("ESPERICUETA"), a Mexican Citizen, applied for entry into the United States from Mexico through the Otay Mesa POE in vehicle lane #1. ESPERICUETA was the driver, sole occupant, and registered owner of a 2005 Acura MDX ("the vehicle") bearing California license plates.

8.     A Canine Enforcement Team was conducting pre-primary operations when the Human and Narcotic Detection Dog alerted to the rear floor of the vehicle.

9.     A Customs and Border Protection Officer received two negative Customs

1   declarations from ESPERICUETA. ESPERICUETA stated he was crossing the border to

2   go to San Bernadino, California. The vehicle was referred for further inspection.

3          10.    A CBPO operating the Z-Portal X-Ray machine detected anomalies in the

4   spare tire and rear cargo area of the vehicle.

5          11.    Further inspection of the vehicle resulted in the discovery of approximately

6   48 total packages concealed inside a non-factory compartment welded underneath the rear

7   passenger seats and inside the spare tire underneath the rear of the vehicle, with a total

8   approximate weight of 43.32 kgs (95.50 lbs).  A sample of the substance contained within

9   the packages field tested positive for the characteristics of methamphetamine.

10         12.    ESPERICUETA was placed under arrest at approximately 4:05 AM.

11         13.    During a post-Miranda interview, ESPERICUETA denied knowledge that the

12  narcotics were in the vehicle. ESPERICUETA stated on March 25, 2024, he drove the

13  vehicle from San Bernardino, California to the Tijuana, Baja California, Mexico Airport to

14  fly to Nayarit, Mexico. ESPERICUETA stated he parked and left the vehicle at the Tiuana

15  Airport parking structure while he was in Nayarit, Mexico for about three weeks.

16  ESPERICUETA stated he and his adult daughters were the only individuals that would be

17  able to have access to his vehicle. ESPERICUETA stated he flew from Nayarit, Mexico

18  and arrived at the Tijuana Airport on April 15, 2024 at approximately 11:00 PM.

19  ESPERICUETA stated he then drove to the Otay Mesa Port of Entry and was going home

20  to San Bernardino, California.

21         14.    ESPERICUETA was arrested and charged with a violation of Title 21, United

22  States Code, 952 and 960, importation of a controlled substance in 24-cr-00875-LL.

23         15.    The Target Device was found and seized by a Customs and Border Protection

24  Officer (CBPO) who was tasked to perform a secondary inspection of the Vehicle and

25  inventory all the property seized from the Defendant and his Vehicle. The Target Device

26  was found by the CBPO on top of the front passenger seat of the vehicle within arms reach

27  of ESPERICUETA and, during the interview, Defendant was shown the Target Device and

28  identified the Target Device as belonging to him.

16.     Based upon my training and experience, consultation with other law enforcement officers experienced in narcotics trafficking investigations, and all the facts and opinions set forth in this affidavit, I believe that telephone numbers, contact names, electronic mail (email) addresses, appointment dates, messages, pictures and other digital information are stored in the memory of the Target Device.  In light of the above facts and my experience and training, there is probable cause to believe that Defendant was using the Target Device to communicate with others to further the importation of illicit narcotics into the United States.  Further, in my training and experience, narcotics traffickers may be involved in the planning and coordination of a drug smuggling event in the days and weeks prior to an event. Co-conspirators are also often unaware of a defendant's arrest and will continue to attempt to communicate with a defendant after their arrest to determine the whereabouts of the narcotics.

17.     Based upon my training and experience, it is also not unusual for individuals, such as Defendant, to attempt to minimize the amount of time they were involved in their smuggling activities, and for the individuals to be involved for weeks and months longer than they claim. Accordingly, I request permission to search the Target Device for data beginning on April 2, 2024 up to and including April 16, 2024.

**METHODOLOGY**

18.     It is not possible to determine, merely by knowing the cellular telephone's make, model and serial number, the nature and types of services to which the device is subscribed and the nature of the data stored on the device. Cellular devices today can be simple cellular telephones and text message devices, can include cameras, can serve as personal digital assistants and have functions such as calendars and full address books and can be mini-computers allowing for electronic mail services, web services and rudimentary word processing. An increasing number of cellular service providers now allow for their subscribers to access their device over the internet and remotely destroy all of the data contained on the device. For that reason, the device may only be powered in a secure environment or, if possible, started in "flight mode" which disables access to the network.

Unlike typical computers, many cellular telephones do not have hard drives or hard drive equivalents and store information in volatile memory within the device or in memory cards inserted into the device. Current technology provides some solutions for acquiring some of the data stored in some cellular telephone models using forensic hardware and software. Even if some of the stored information on the device may be acquired forensically, not all of the data subject to seizure may be so acquired. For devices that are not subject to forensic data acquisition or that have potentially relevant data stored that is not subject to such acquisition, the examiner must inspect the device manually and record the process and the results using digital photography. This process is time and labor intensive and may take weeks or longer.

19.     Following the issuance of this warrant, I will collect the **Target Device** and subject it to analysis. All forensic analysis of the data contained within the telephone and its memory cards will employ search protocols directed exclusively to the identification and extraction of data within the scope of this warrant.

20.     Based on the foregoing, identifying and extracting data subject to seizure pursuant to this warrant may require a range of data analysis techniques, including manual review, and, consequently, may take weeks or months. The personnel conducting the identification and extraction of data will complete the analysis within ninety (90) days of the date the warrant is signed, absent further application to this court.

**PRIOR ATTEMPTS TO OBTAIN THIS EVIDENCE**

21.     Law enforcement has previously attempted to obtain the evidence sought by this warrant because Defendant provided consent. Based on that consent, Special Agents conducted a manual review and obtained a partial cell phone download. Since then, I have discussed this case with a Computer Forensic Analyst (CFA) and it is my understanding that a full forensic download may review additional information to include location data. Based on this, I am submitting this warrant to the Court to gain a complete phone extraction.

//

## CONCLUSION

22.     Based on the facts and information set forth above, I submit there is probable cause to believe that a search of the **Target Device** will yield evidence of Defendant's violations of Title 21, United States Code, Sections 952, 960 and 963. Accordingly, I request that the Court issue a warrant authorizing law enforcement to search the item described in Attachment A, and seize the items listed in Attachment B using the above-described methodology.

I swear the foregoing is true and correct to the best of my knowledge and belief.

_____
Special Agent Christopher Villanueva
Homeland Security Investigations

Sworn and attested to under oath by telephone, in accordance with Federal Rule of Criminal Procedure 4.1, this 27th day of September 2024.

_____
Hon. Michael S. Berg
United States Magistrate Judge